# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **DAVID J. BIRENBAUM,** | : | **Bankruptcy No. 05-20640 BM** |
| | : | |
| | : | |
| **Debtor** | : | **Chapter 7** |

**********************************

| | | |
|---|---|---|
| **STEVEN D. GINSBURG, on behalf of** | : | |
| **THE VERTICAL GROUP, INC. and** | : | |
| **STEVEN D. GINSBURG,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Adversary No. 05-2506 BM** |
| | : | |
| **DAVID J. BIRENBAUM,** | : | **Trial On Compliant To Determine** |
| | : | **Dischargeability Of Debt** |
| **Defendant** | : | |

Appearances:  Charles E. Bobinis, Esq. for Plaintiffs
              Donald Calaiaro, Esq. for Defendant

## <u>MEMORANDUM OPINION</u>

Plaintiff Steven Ginsburg seeks a determination in this adversary action that a debt owed to him by debtor David Birenbaum, which arose out of a final judgment and order enforcing a settlement agreement issued by a court in Florida, is excepted from discharge by § 523(a)(4) of the Bankruptcy Code.  He maintains that debtor is collaterally estopped from re-litigating certain issues of fact determined by the Florida court.

Debtor denies that he is collaterally estopped from re-litigating those issues of fact in this case and asserts that the debt is not excepted from discharge by § 523(a)(4).

Judgment will be entered in favor of defendant debtor and against plaintiff Ginsburg. We conclude that collateral estoppel does not apply to this adversary action and that the debt in question is not excepted from discharge by § 523(a)(4).

## – FACTS –

The Vertical Group, Inc., a closely-held Florida corporation which was incorporated in 1993, was in the business of buying and selling real estate for commercial development. Debtor and Ginsburg each held fifty percent of its outstanding shares at all times relevant to this adversary action.

Debtor was a director of the corporation as well as its president and treasurer. Ginsburg disengaged himself from the affairs of the corporation in March of 1997, leaving debtor in sole control of its day-to-day operations. Ginsburg, an attorney, thereafter devoted himself to the full-time practice of law.

The relationship of debtor and Ginsburg, who had been best friends, deteriorated and became highly contentious at some unknown time after March of 1997. On April 11, 2000, Ginsburg commenced a shareholder derivative action against debtor on behalf of the corporation[1] in The Circuit Court for Miami-Dade County, Florida.

Among other things, Ginsburg asserted in Count I of the complaint that debtor had: used funds of the corporation to make loans to himself and to others for his sole benefit (¶ 6.c); withdrawn cash from the corporation for his sole benefit (¶ 6.d); misappropriated funds of the corporation and disposed of its property without paying the

---

[1] Paragraph 1 of the complaint asserted that the lawsuit was "a derivative action to prosecute a cause of action *held by the corporation* for damages".

proceeds derived therefrom to the corporation (¶ 6.e); borrowed funds from the corporation when there was no reasonable expectation of a benefit to the corporation (¶ 6.f); spent, diverted and otherwise disbursed funds of the corporation without maintaining proper records and without accounting for the expenditures (¶ 6.g); wrongfully and unlawfully discharged his duties as a director and an officer of the corporation (¶ 6.h); misapplied and wasted the corporation's assets (¶ 6.i); disposed of property of the corporation without accounting for it (¶ 6.j); unlawfully paid dividends (¶ 6.k) refused to account for the profits of the corporation or to repay amounts he withdrew from it (¶ 6.l); and refused to permit inspection of the corporation's books and records or to substantiate the above transactions (¶ 6.m). In the *ad damnum* clause, Ginsburg requested a monetary judgment in favor of the corporation and attorney's fees and costs incurred in prosecuting the matter.

It was alleged in paragraph 7 of the complaint that, as a result of the actions set forth in paragraph 6, the corporation lost earnings from the assets debtor withdrew and lost profits as a result of the sale of assets debtor withdrew from the corporation.

Count II of the complaint requested an order directing debtor to permit an inspection of the corporation's books and records.

In Count III, Ginsburg alleged that he and debtor as directors and shareholders were deadlocked in managing the corporation's affairs.  He requested an order dissolving the corporation and appointing a receiver to liquidate its assets.

Debtor and Ginsburg executed a settlement agreement on September 26, 2000, which purported to resolve the above lawsuit.  The settlement agreement provided, among other things, that debtor would purchase Ginsburg's shares in the corporation for the sum of $90,000.

Paragraph 9 of the agreement provided that the Florida court would retain jurisdiction to enforce the settlement agreement.  In the event of a default by debtor, the Florida court would enter a final judgment in favor of Ginsburg for the sums "due hereunder", in addition to attorney's fees and costs Ginsburg incurred in enforcing the settlement agreement.

Paragraph 10 of the settlement agreement provided that it would have *res judicata* and collateral estoppel effect in any bankruptcy proceeding concerning the dischargeability of the debts set forth therein.  Such debts, in other words, were not dischargeable in bankruptcy.

Debtor defaulted on his obligations arising under the settlement agreement, whereupon Ginsburg filed a so-called "stipulation" in the Florida court for entry of a final judgment.  Among other things, the "stipulation" provided that if debtor filed a bankruptcy petition, he agreed that Ginsburg had not waived his right to object to the dischargeability of any debt arising under the settlement agreement or any final judgment.  Despite the representation that debtor had "stipulated" to the entry of a final judgment in favor of Ginsburg, only Ginsburg signed the "stipulation".  Neither debtor nor his attorney had done so.

A hearing on the "stipulation" was held by the Florida court on January 29, 2001. While it is certain that debtor's attorney was not present at the hearing, there was conflicting testimony as to whether debtor participated on a *pro se* basis.

At the conclusion of the hearing, the Florida court granted the motion to enforce the settlement agreement and issued a final judgment in favor of Ginsburg in the amount of $90,000.  Paragraph 7 of the order provided as follows:

> Pursuant to the Settlement Agreement, the allegations of Plaintiff's Complaint in Case No. 00-9410 (CA 21) set forth sufficient facts to entitle Plaintiff to a final judgment[,] which facts are true and are stipulated to by Birenbaum.  As further agreed to by Birenbaum and pursuant to the Settlement Agreement, this Final Judgment shall have *res judicata* and collateral estoppel effect in any bankruptcy case or proceeding concerning the dischargeability of the debts and obligations set forth herein or in any final judgments resulting hereunder, whether the discharge is sought under § 523 of § 727 or any other provision of the United States Bankruptcy Code, and such debts shall be non-dischargeable and excepted from discharge.

Debtor did not appeal the order issued by the Florida court on January 29, 2001.

The Florida court subsequently issued an order on October 4, 2001, awarding Ginsburg attorney's fees and costs in the amount of $40,000 plus interest.  This was in addition to the $90,000 it had awarded him in the order dated January 29, 2001.

Debtor filed a voluntary chapter 7 petition on January 19, 2005.  Ginsburg was identified on the schedules as having an undisputed general unsecured claim in the amount of $94,875 arising from the above order of January 29, 2001.

Ginsburg thereafter commenced this adversary action against debtor.  He seeks a determination that the $90,000 debt arising from the order of January 29, 2001, and the

- 5 -

$40,000 debt arising from the order of October 4, 2001, are excepted from discharge by § 523(a)(4) of the Bankruptcy Code.

The matter has been tried and is now ready for decision.

## – ANALYSIS –

### Does Collateral Estoppel Apply?

As was noted, the judgment and order the Florida court issued on January 29, 2001, declared in paragraph 7 that the facts as alleged in the complaint in that lawsuit were true and sufficed to warrant a final judgment in Ginsburg's favor.  It further declared that the final judgment would have collateral estoppel effect in any future bankruptcy proceeding concerning the dischargeability of the debts set forth in that judgment.  Those debts, in other words, were not dischargeable in bankruptcy.

According to Ginsburg, the facts "embodied" in paragraph 7 of the above order are binding on this court.  Moreover, he continues, debtor is collaterally estopped from re-litigating in this adversary action the facts alleged in the complaint in the Florida action which were found to be true by the Florida court in the above judgment and order.

To the extent that the Florida court merely recited the principle that the facts as determined by it *may* have collateral estoppel effect in this adversary action, the declaration is not objectionable.  Collateral estoppel applies in proceedings arising under § 523(a)(4) of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 285 n.11, 111 S.Ct. 654, 658 n.11, 112 L.Ed.2d 755 (1991).

- 6 -

To the extent that the Florida court has arrogated unto itself the authority to determine whether the debts owed by debtor to Ginsburg are or are not dischargeable in bankruptcy, however, its declaration is objectionable.  Congress reserved for bankruptcy courts *exclusive* jurisdiction to determine whether a particular debt is dischargeable in bankruptcy. *Grogan*, 498 U.S. at 284 n.10, 111 S.Ct. at 658 n.11.

It is of no consequence for this adversary action that debtor stipulated in the settlement agreement that the debt he owed to Ginsburg was not dischargeable.  A debtor cannot in advance of a bankruptcy filing contract away the right to have his or her debts discharged. *Alsan Corp. v. DiPierro (In re DiPierro)*, 69 B.R. 279, 282 (Bankr. W.D. Pa. 1987).  A pre-petition waiver of the discharge of a particular debt undercuts one of the primary purposes of the Bankruptcy Code and is not enforceable. *Hayhoe v. Cole (In re Hayhoe)*, 226 B.R. 647, 654 (9th Cir. BAP 1998).  Such a waiver is contrary to public policy. *Bank of China v. Huang (In re Huang)*, 275 F.3d 1173, 1177 (9th Cir. 2002).

Having said all of the above, it is for this court to determine whether debtor is collaterally estopped from denying the facts as determined by the Florida court in its judgment and order enforcing the settlement agreement.

The criteria for determining whether collateral estoppel applies in a particular case depend on which court rendered the prior decision.  If a federal court rendered the prior decision, federal criteria apply. *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 214 (3d Cir. 1997).  If a state court rendered it, the criteria of the state in which the judgment was rendered apply.  A federal court must accord the judgment of the state

- 7 -

court the same preclusive effect as it would have under the laws of the state in which it was rendered. *Marrese v. American Academy of Orthopaedic Surgeons* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331-32, 84 L.Ed.2d 274 (1985).

The prior judgment at issue here was rendered by a Florida state court. According to Florida law, collateral estoppel precludes re-litigating an issue when: (1) the identical issue; (2) previously was fully litigated; (3) by the same parties or their privies; (4) a final decision was rendered by a court of competent jurisdiction; and (5) the issue was critical and necessary to the prior determination. *Wingard v. Emerald Venture Florida*, 438 F.3d 1288, 1293 (11th Cir. 2006).

The party invoking collateral estoppel to prevent the re-litigation of an issue decided in a prior proceeding has the burden of establishing its applicability with "sufficient certainty" through the record or by extrinsic evidence. *Campbell v. State of Florida*, 906 So. 2d 293, 295 (Fla. App. 2d 2004).

As has been noted, paragraph 7 of the judgment and order of January 29, 2001, provided in part as follows:

> Pursuant to the Settlement Agreement, the allegations of Plaintiff's Complaint ... set forth sufficient facts to entitle Plaintiff to a final judgment[,] which facts are true and are stipulated to by Birenbaum.

The critical allegations against debtor in Count I of the complaint in the Florida action, wherein Ginsburg sought a monetary judgment *in favor of the corporation*, were set out in paragraphs 6 and 7. The specifics of those allegations were detailed previously in this memorandum opinion and will not be reiterated here.

As we understand it, the Florida court was referring to the factual allegations in paragraphs 6 and 7 of the complaint when it decreed in paragraph 7 of its judgment and order of January 29, 2001, that the facts set forth in the complaint were true and entitled Ginsburg to a judgment in his favor.

We are not convinced that all of the above requirements for the application of collateral estoppel are satisfied in this instance.  In particular, we are not convinced that the document captioned "Final Judgment and Order Enforcing Settlement Agreement", which was issued by the Florida court on January 29, 2001, was a final judgment which *disposed of the shareholder derivative action on behalf of the corporation Ginsburg had brought.*  In addition, we are not convinced that the determination made in paragraph 7 of the Florida court's judgment and order that the facts alleged in the complaint were true and entitled *Ginsburg* to a judgment in his favor was necessary for the issuance of that judgment and order in favor of Ginsburg.

A shareholder derivative action, originally a product of the common law, was created to provide a vehicle for shareholders of a corporation to police "faithless directors and managers". *Larsen v. Island Developers, Ltd.*, 769 So. 2d 1071, 1072 (Fla. App. 3d 2000)(quoting *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 548, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)).  A shareholder is permitted in such a lawsuit to pursue causes of action *belonging to the corporation. Provence v. Palm Beach Taverns, Inc.*, 676 So. 2d 1022, 1024 (Fla. App. 4th 1996).  The corporation is the real party in interest, while the shareholder is only a nominal party. *Id.*

Review of the so-called "Final Judgment and Order Enforcing Settlement Agreement" the Florida court issued on January 29, 2001, indicates that, in spite of its caption, it merely enforced the settlement between debtor and Ginsburg.  It did not resolve in any way the causes of action belonging to the corporation that were asserted in the complaint; it was not a judgment of any kind with respect to those causes of action.

Paragraphs 1 and 2 of the recital portion of the self-styled final judgment and order stated that debtor had failed to perform the settlement agreement and that Ginsburg consequently had to spend additional funds of his own to enforce their agreement.  The causes of action belonging to the corporation Ginsburg had asserted on its behalf were not mentioned.

Paragraph 1 of the decretal portion of the judgment and order granted Ginsburg's motion to enforce the settlement agreement and entered judgment in his favor *in his own right*.  As we understand it, final judgment was not issued on behalf of the corporation.

Paragraph 2 of the decretal portion of the judgment and order decreed that *Ginsburg* was to recover the sum of $90,000 from debtor plus attorney's fees in an amount to be determined at a later time.  Once again, no mention was made of the corporation.

Paragraph 3 adopted the settlement agreement, in which the corporation was not involved in any way.

Paragraph 6 of the judgment and order[2] decreed that Ginsburg was entitled to recover reasonable attorney's fees and costs he incurred in enforcing the settlement agreement.

We conclude in light of the foregoing that the document captioned "Final Judgment and Order Enforcing Settlement Agreement" issued by the Florida court on January 29, 2001, did *not* dispose of or adjudicate the issues raised in the complaint by Ginsburg on behalf of the corporation.  The judgment and order resolved only matters concerning the settlement agreement between debtor and Ginsburg, which in turn had nothing to do with the causes of action Ginsburg had asserted in the complaint on behalf of the corporation.  The judgment and order of January 29, 2001, in other words, does not satisfy requirement (3) for collateral estoppel to apply to this adversary action.

We further conclude that requirement (5) for collateral estoppel to apply also is not satisfied in this instance.  The statement in paragraph 7 of the decretal portion of the judgment and order of January 29, 2001, that the facts as alleged in the complaint brought in the shareholder derivative action were true and entitled Ginsburg to a judgment in his favor was *gratuitous* for purposes of enforcing the settlement agreement between debtor and Ginsberg.  Those facts were not relevant to whether the settlement agreement should be enforced

The proposed judgment and order which the Florida court issued on January 29, 2001, was drafted and submitted by Ginsburg.  We have no doubt that Ginsburg included

---

[2.] For reasons that are not of record, the judgment and order enforcing the settlement agreement had no paragraphs 4 and 5.

- 11 -

the superfluous language in paragraph 7 of the decretal portion of the judgment and order because he was concerned that debtor might file a bankruptcy petition and attempt to have the debt he owed to Ginsburg discharged.  By including paragraph 7 in the decretal portion of the judgment and order, Ginsburg went beyond what was necessary for the Florida court to enforce the settlement agreement.

We conclude in light of the foregoing considerations that not all of the requirements for collateral estoppel to apply to this adversary action have been satisfied. Ginsburg's attempt to preclude debtor from re-litigating the factual determinations made by the Florida court in paragraph 7 of the decretal portion of its judgment and order of January 29, 2001, must fail.

### *Does § 523(a)(4) Apply ?*

Our discussion does not end with the conclusion that collateral estoppel does not apply to this adversary action.  The debt owed to Ginsburg in his own right by debtor which arises from the judgment and order enforcing the settlement agreement between them is not excepted from discharge by § 523(a)(4) *even if all of the above requirements of collateral estoppel were satisfied*.

Section 523(a)(4), upon which Ginsburg relies, provides in part as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt -- ....
>> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4).

- 12 -

A creditor objecting to the dischargeability of a particular debt has the burden of proving, by a preponderance of the evidence, that the debt falls within the scope of one of the numerous exceptions to dischargeability found at § 523(a).  *Grogan*, 498 U.S. at 291, 111 S.Ct. at 661.

To prevail on the theory that debtor committed fraud or defalcated while acting in a fiduciary capacity for purposes of § 523(a)(4), Ginsburg must prove that: (1) debtor was acting in a fiduciary capacity when the alleged wrongful conduct occurred; and (2) debtor committed fraud or defalcation while acting in that capacity. *Heer v. Scott (In re Scott)*, 294 B.R. 620, 630 (Bankr. W.D. Pa. 2003).  He also must prove that damages resulted. *Financial Partnership v. Steele (In re Steele)*, 2005WL281154, *3 (Bankr. E.D. Pa. 2005).

Under Florida law, a director of a corporation is obligated to exercise his or her duties as a director in good faith, with the level of care an ordinarily prudent person in a like position would exercise under like circumstances, and in a manner he or she believes is in the best interest of the corporation. Fla. Stat. Ann. § 607.0830(1)(a)-(c).

The relationship between a director and the corporation and its shareholders has been variously described by Florida courts.  Some have characterized it as a fiduciary relationship. E.g., *Rehabilitation Advisors, Inc. v. Floyd,* 601 So. 2d 1286, 1288 (Fla. App 5th 1992).  Others have characterized it as a *quasi-*fiduciary relationship. E.g., *Florida Equipment & Engineering Corp. v. Shelton*, 103 So. 2d 615, 626 (Fla. 1958).

We fortunately need not sort through this difference in terminology to determine whether, for purposes of § 523(a)(4), debtor owed a fiduciary duty to the corporation and to Ginsburg as a shareholder.

The United States Court of Appeals for the Third Circuit apparently has not said whether the criteria for determining whether a debtor acted in a fiduciary capacity are the same as the criteria for making such a determination under state law.  Appellate courts which have addressed the issue, however, have concluded that federal rather state law governs in this regard.  *E.g.*, *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005); *Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1189 (9th Cir. 2001).

The concept of a fiduciary for purposes of § 523(a)(4) is narrower than it is under state law. *Blaszak*, 397 F.3d at 391; *Miller v. J. D. Abrams (Matter of Miller)*, 156 F.3d 598, 602 (5th Cir. 1998), *cert. denied*, 526 U.S. 1016, 119 S.Ct. 1250, 143 L.Ed.2d 347 (1999). A debtor may, in other words, qualify as a fiduciary under state law while not so qualifying for purposes of § 523(a)(4).

The concept of a fiduciary for purposes of § 523(a)(4) applies only in situations in which an express or technical trust exists.  Among other things, the alleged trustee's obligations must have arisen prior to rather than as a consequence of tortious conduct by that individual.  A constructive trust or a trust *ex maleficio* consequently does not fall within the scope of § 523(A)(4). *Texas Lottery Commission v. Tran (Matter of Tran)*, 151 F.3d 339, 342 (5th Cir. 1998).

While federal rather than state law controls in defining what it is to be a fiduciary for purposes of § 523(a)(4), we may look to state law, in this instance the law of Florida, to determine whether the required express or technical trust is present. *Lewis v. Scott (In re Lewis),* 97 F. 3d 1182, 1185 (9th Cir. 1996).

For an express trust to exist under Florida law, there must be: (1) a settlor or grantor; (2) a trustee; (3) one or more beneficiaries; and (4) an indication that property was conveyed for purposes of the trust. *McLemore v. McLemore*, 675 So. 2d 202, 205 (Fla. App. 1st 1996). There also must be a definite intent on the settlor's part to create a trust and also be clearly ascertainable beneficiaries. *Id.* The legal and equitable interests in the trust *res* must reside in separate entities. *Contella v. Contella*, 559 So. 2d 1217, 1218 (Fla. App. 5th 1990).

The record in this case is devoid of any evidence indicating that an express trust, of which debtor was the trustee, existed in this case. There was no settler or grantor who conveyed legal title to the corporation's asserts to debtor. Legal title to the corporation's assets remained in the corporation at all relevant times. There also was no *cestui que trust* – i.e., beneficiary – who held the equitable interest in those assets. The equitable interest also resided in the corporation at all relevant times.

Debtor was a director and officer of the corporation who undoubtedly was charged with managing its affairs in good faith and in a manner which was in its best interest. While he may have qualified under Florida law as a fiduciary with respect to the corporation and its shareholders, he did *not* so qualify for purposes of § 523(a)(4).

Having so determined, we need not consider whether debtor committed fraud or defalcation when he supposedly misappropriated the corporation's assets for his own personal benefit, as set forth in paragraph 6 of the complaint in the Florida action.

Our inquiry does not end with this last determination. The exception to the discharge of a particular debt in accordance with § 523(a)(4) may still apply if debtor's actions amounted to embezzlement or larceny.

As is the case with the phrase "while acting in a fiduciary capacity", the meanings of the terms "embezzlement" and "larceny" for purposes of this provision are determined by federal rather than state law. *In re Steele*, 2005WL281154 at *3.

A debtor need not act in a fiduciary capacity when committing embezzlement or larceny for the resulting debt to be excepted from discharge by § 523(a)(4). *Webber v. Giarratano (In re Webber)*, 299 B.R. 328, 337 (Bankr. D. Del. 2003). The phrase "while acting in a fiduciary capacity" modifies only the phrase "fraud or defalcation"; it does not modify the phrase "embezzlement or larceny".

To prove that debtor committed embezzlement within the meaning of § 523(a)(4), Ginsburg must establish that: (1) debtor was entrusted; (2) with property; (3) of another; (4) which debtor appropriated for his own use; and (5) with fraudulent intent. *Id*. To prove that a debtor committed larceny within the meaning of the same provision, Ginsburg must establish that: (1) debtor wrongfully took; (2) property; (3) of another; (4) without the consent of the owner; and (5) with intent to convert the property. *Id*.

- 16 -

Fraudulent intent is a requirement common to both embezzlement and larceny. *Id*. Without it, there can be no embezzlement or larceny for purposes of § 523(a)(4).

Although the caption of the complaint in this adversary action names the corporation as well Ginsburg as plaintiffs, a fair reading of the complaint makes it abundantly clear that Ginsburg only seeks a determination in this case that the debt owed to him *in his own right* is excepted from discharge by reason of § 523(a)(4). He is *not* seeking a determination that any debt owed to the corporation by debtor is excepted from discharge by this provision of the Bankruptcy Code.

In paragraphs 1 and 2 of the complaint in this adversary action, Ginsburg refers to the settlement agreement he and debtor entered into on September 29, 2001, and to the order issued on January 29, 2001, in which the Florida court enforced the settlement agreement. We previously determined that the relief granted in the order of January 29, 2001, was in favor of Ginsburg *in his own right* and that no relief was granted to the corporation. In paragraph 3, Ginsburg refers to the subsequent order issued on October 4, 2001, in which the Florida court awarded Ginsburg in his own right an additional $40,000 in attorney's fees and costs. In paragraphs 14 and 16, Ginsburg maintains that the debts resulting from these orders remain unsatisfied. In the "Wherefore" clause of the complaint in this adversary action, Ginsburg requests a determination that the debt *owed to him* which arises out of the orders issued by the Florida court on January 29, 2001, and October 4, 2001, are not dischargeable.[3]

---

[3.] This conclusion is reinforced by the characterization of this adversary action in the joint pretrial stipulation as a proceeding to determine whether the debt *owed to Ginsburg* is excepted from discharge by § 523(a)(4). Nothing is said about any debt *owed to the*

The conclusion that Ginsburg is not seeking a determination in this adversary action that any debt owed by debtor *to the corporation* is excepted from discharge, but instead is seeking a determination that the debt owed by debtor to *Ginsburg in his own right* is not dischargeable, is significant in determining whether debtor committed embezzlement or larceny for purposes of § 523(a)(4) when he allegedly committed the acts set forth in paragraph 6 of the complaint in the Florida case. The evidence in this case does not support the conclusion that if debtor committed those acts, he thereby committed embezzlement or larceny *with respect to Ginsburg*.

Ginsburg did not own the property debtor supposedly misappropriated or converted to his own use. It was owned by the corporation. Ginsburg has not explained how debtor committed embezzlement or larceny with respect to him when debtor supposedly misappropriated assets belonging to the corporation.

Even if this were not a problem, Ginsburg's quest to have the debt owed to him by debtor excepted from discharge must fail for another reason: the requisite fraudulent intent for embezzlement or larceny to occur was not present.

Debtor and Ginsburg, by then the only shareholders of the corporation, had an informal, pre-existing agreement between themselves that the corporation would serve as their collective piggybank and that each of them would use the corporation's assets for their personal benefit when they saw fit to do so. The acts committed by debtor of which Ginsburg complains in paragraph 6 of the Florida complaint fall squarely within the scope

---

*corporation* by debtor.

- 18 -

of their informal agreement.[4]   In light of this informal agreement, we are not willing to conclude that when debtor misappropriated assets owned by the corporation and used them for his personal benefit, he did so with intent to defraud *Ginsburg*. To the contrary, he did so with the implicit consent of Ginsburg.

We note in closing that neither party to this adversary action has displayed much in the way of candor or integrity. Both obviously had much to hide from the court.

For his part, debtor calmly and reassuringly testified under oath that he had repaid much of the money he took from the corporation and claimed that he had loaned it a substantial sum of money which was never repaid. When asked on cross-examination whether he had documents to support his testimony, debtor matter-of-factly admitted that he did not and mumbled *sotto voce* he could not do so because "that was a long time ago". Debtor's testimony that he had repaid the corporation was a palpable fabrication.

Ginsburg fared no better as a witness than did debtor. Ginsburg, who at one time had been a prosecutor and surely knew what he was doing, repeatedly resorted to inadmissible hearsay in response to questions asked by his own counsel. Moreover, his testimony frequently was evasive and was not responsive to questions asked of him. When he did not care to respond to a question, Ginsburg would change the subject and talk about something else.

---

[4.] We do not know why Ginsburg elected to pursue debtor in the Florida action when he did. The self-styled shareholder derivative action commenced in April of 2000, some seven months before the corporation went into bankruptcy in The United States Bankruptcy Court for the Southern District of Florida. How that bankruptcy case turned out is not apparent from the record in this case. We are, however, left with the impression that debtor's cupidity in stripping the corporation of its assets had impinged upon Ginsburg's opportunity to do the same.

In an ideal world, neither party would prevail in this adversary action. Ours, unfortunately, is a far-from-ideal world.  We are not part of a Ministry of Justice that has a duty to effect true justice in every instance, but nonetheless have a duty to enforce the law.  Applying the evidence offered at trial to the law as we understand it, we conclude that the debt owed by debtor to Ginsburg is not excepted from discharge by § 523(a)(4) of the Bankruptcy Code.  The debt, in other words, is dischargeable.

An appropriate order shall issue.

_____/s/_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

Dated: **July 6, 2006**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **DAVID J. BIRENBAUM,** | : | **Bankruptcy No. 05-20640 BM** |
| | : | |
| | : | |
| **Debtor** | : | **Chapter 7** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| | | |
|---|---|---|
| **STEVEN D. GINSBURG, on behalf of** | : | |
| **THE VERTICAL GROUP, INC. and** | : | |
| **STEVEN D. GINSBURG,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Adversary No. 05-2506 BM** |
| | : | |
| **DAVID J. BIRENBAUM,** | : | **Complaint To Determine** |
| | : | **Dischargeability Of Debt** |
| **Defendant** | : | |

### ORDER OF COURT

**AND NOW,**  this **6th** day of **July**, 2006, for reasons set forth in the foregoing

memorandum opinion, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** that judgment

be and hereby is entered in favor of defendant/debtor David J. Birenbaum and against

plaintiff Steven D. Ginsburg.  The debt owed by debtor to plaintiff is **DISCHARGEABLE**.

It is **SO ORDERED**.

**/s/**
_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

Service of this Memorandum Opinion and Order of Court shall be made on the following
parties:  Charles E. Bobinis, Esq.; Donald R. Calaiaro, Esq.; Jeffrey J. Sikirica, Esq.; Office
of United States Trustee